**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | | |
|---|---|---|
| ARNE S. DUNHEM, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | | Civil Action No. AW-04-1016 |
| | * | |
| SUNTRUST BANKS, INC., | | |
| | * | |
| Defendant. | | |

\* \* \* \* \*

**MEMORANDUM OPINION**

This action involves a suit brought by Arne and Eva Dunhem ("Plaintiffs" or "the Dunhems") against SunTrust Banks, Inc. ("Defendants" or "SunTrust"), for various state law claims related to SunTrust's alleged mismanagement of Plaintiffs' retirement funds. Currently pending before the Court is Defendant's Motion *in Limine* to Exclude Plaintiff's Designated Expert [65]. The Court has reviewed the entire record, as well as the Pleadings with respect to the instant motion. No hearing is deemed necessary. *See* Local Rule 105.6. For the reasons stated below, the Court will GRANT Defendant's Motion.

**FACTUAL AND PROCEDURAL BACKGROUND**

This Court has already summarized the relevant facts in this case in Memorandum Opinions dated September 1, 2004 and November 10, 2004. In December 1998, Plaintiffs transferred approximately $3.95 million in securities from Fidelity Investments to SunTrust, through SunTrust's predecessor in interest Crestar Bank. With the transfer, Plaintiffs placed "essentially 100 percent" of their net worth with the bank. At that time, Plaintiffs had a total margin balance of approximately $1.17 million at Fidelity Investments. SunTrust representatives advised Plaintiffs to open a line of credit with the bank in order to pay off these loan obligations. SunTrust also informed Plaintiffs that they could use this line of credit to provide working capital for erbia, Inc., Plaintiffs' new business

venture.  Plaintiffs also established a $2.5 million line of credit with SunTrust.  As a condition of this line of credit, SunTrust required that Plaintiffs' collateral securing the line of credit have a value of at least 154 percent of the funds extended.

During the time that the Dunhems invested with SunTrust, the Dunhems' portfolio was invested almost entirely in equities, and approximately 65 percent of the equities in the portfolio were comprised of two stocks: (1) America On-line ("AOL") and (2) MCI Worldcom. The value of the portfolio grew from January 1999 through February 2000, but declined from March 2000 through September 2002. Eventually, in October 2002, SunTrust forced the Dunhems to liquidate all the accounts to pay off the remaining balance on the line of credit.  After the payment of interest and the principal due on the line of credit, the Dunhems were left with almost nothing.

On February 17, 2004, Plaintiffs filed a Complaint in the Maryland state court.  On March 29, 2004, Defendant removed the case to federal court on the basis of diversity jurisdiction. Plaintiffs' Amended Complaint alleges claims for misrepresentation and omission of materials facts, negligence, and breach of contract.  This Court issued a Scheduling Order on October 26, 2004, which required Plaintiffs to make Rule 26(a)(2) disclosures by December 27, 2004.  Before the disclosure date, Plaintiff's designated James D. Hardesty ("Mr. Hardesty"), an investment advisor with more than 30 years of experience, as an expert on their damages.  On February 1, 2005, Plaintiffs filed an unopposed motion to modify the Scheduling Order and move the deadline for rebuttal disclosures to April 22, 2005 and the deadline for Rule 26(e)(2) supplementation disclosures to April 29, 2005.  This Court granted this motion by paperless order on February 2, 2005.  On August 15, 2005, Defendant filed the instant motion in *limine*.  This motion is ripe, and the Court will now issue an Opinion.

## DISCUSSION

I.   Defendant's Motion to Exclude Mr. Hardesty Because of Violations of Rule 26(a) of the
     Federal Rules of Civil Procedure

Defendant contends that Plaintiffs failed to file adequate expert disclosures pursuant to the

requirements of Rule 26(a)(2) of the Federal Rules of Civil Procedure and Rule 702 of the Federal

Rules of Evidence.

Rule 26(a)(2) provides that a party must disclose the identity of experts it intends to call at

trial and that such disclosure be "accompanied by a written report prepared and signed by the

witness."  That report must contain:

> a complete statement of all opinions to be expressed and the basis and
> reasons therefor; the data or other information considered by the
> witness in forming the opinions; any exhibits to be used as a
> summary of or support for the opinion; the qualifications of the
> witness, including a list of all publications authored by the witness
> within the preceding ten years; the compensation to be paid for the
> study and testimony; and a listing of any other cases in which the
> witness has testified as an expert at trial or by deposition within the
> preceding four years.

Fed. R. Civ. P. 26(a)(2)(B).  This language was added to the Federal Rules of Civil Procedure  in

1993 as part of an effort to "facilitate meaningful, and less expensive, discovery of expert opinions."

*Sullivan v. Glock, Inc.*, 175 F.R.D. 497, 499 (D. Md 1997).

To enforce the requirements of Rule 26(a), a court may impose sanctions pursuant to Rule

37(c)(1) , which provides, in pertinent part, that "a party that without substantial justification fails

to disclose information required by Rule 26(a) . . . is not, unless such failure is harmless, permitted

to use as evidence at a trial, at a hearing, or on a motion any witness or information not so

disclosed."  Fed. R. Civ. P. 37(c)(1).  In determining whether to impose so harsh a sanction, the

court must consider: (1) the importance of the excluded testimony; (2) the explanation of the party

3

for its failure to comply with the required disclosures; (3) potential prejudice that would arise from allowing the testimony; and (4) the availability of a continuance to cure such prejudice. *See Sullivan v. Glock, Inc.*, 175 F.R.D. 497, 506-507 (D. Md 1997).

The Scheduling Order in the case, as amended, set forth a December 27, 2004 deadline for Plaintiffs' Rule 26(a)(2) expert witness disclosures and a April 22, 2005 deadline for Plaintiffs' rebuttal disclosures. Plaintiffs' Rule 26(e)(2) supplementation was due by April 29, 2005. Although Plaintiffs designated Mr. Hardesty as an expert witness on December 23, 2004, before the initial deadline, Defendant contends that the expert disclosure accompanying the designation did not comply with the requirements of Rule 26(a)(2)(B) in that it did not provide "a complete statement of all opinions to be expressed and the basis and reasons therefor" and omitted information concerning the qualifications of the witness. Instead, the report submitted on December 23, 2004 consisted only of Mr. Hardesty's curriculum vitae, a statement prepared by Plaintiffs' counsel, and a two-page letter from Mr. Hardesty. This statement indicated that Mr. Hardesty held the preliminary opinion that SunTrust violated its duty of care to Plaintiffs and this violation caused Plaintiffs' losses.

Plaintiffs provided their rebuttal disclosures on April 22, 2005. Plaintiffs, however, did not supplement their initial disclosure until May 24, 2005, almost a month after the April 29, 2005 deadline. This disclosure has become the subject of much dispute. The May 24, 2005 disclosure consisted of a letter from Plaintiffs' counsel, a letter from Mr. Hardesty to Plaintiffs' counsel, and a document entitled "Exhibit A." In his deposition, while Mr. Hardesty conceded that Plaintiffs' Counsel drafted Exhibit A, he assured Defendant's counsel that he provided the methodology and calculations to Plaintiffs' counsel. Defendant's Counsel has argued that the expert's admission

indicates that Plaintiffs have violated Rule 26(a), which requires counsel provide "a written report prepared and signed by the witness."

Generally, the purpose of Rule 26 is to allow the opposing party adequate time to prepare an effective defense. *See* Committee Notes, 1993 Amendments to the Federal Rules of Civil Procedure, 146 F.R.D. 401, 633 (1993) (explaining that the revised Rule 26(a)(2) "imposes an additional duty to disclose information regarding expert testimony sufficiently in advance of trial that opposing parties have a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses"). While this Court recognizes that Plaintiffs' initial disclosure did not comply with all the requirements of Rule 26(a)(2), it does not agree that total exclusion of the testimony is the appropriate remedy for the Rule 26(a) violation. This Court will not impose such a harsh sanction at the present time. Defendant's counsel had an opportunity to depose the witness, and therefore, Defendant had time to prepare a defense. Because Defendant has had a chance to examine the witness, Plaintiffs' failure to comply with the requirements of Rule 26(a)(2) did not cause Defendant prejudice.[1] For these reasons, this Court will not exclude Mr. Hardesty's report and testimony on this ground.

II.    <u>Admissibility of Mr. Hardesty's Testimony under Rule 702 of the Federal Rules of Evidence</u>

Defendant also argues that this Court should exclude Mr. Hardesty under Rule 702 of the Federal Rules of Evidence.

Rule 702 outlines the standard for admissibility of expert testimony and provides that:

---

[1] Nevertheless, this Court expresses no opinion as to whether a jury would give weight to Mr. Hardesty's report. A jury may have serious doubts about Mr. Hardesty's credibility in light of the fact that Mr. Hardesty and Plaintiffs' counsel admit that *Plaintiffs'* counsel drafted parts of Mr. Hardesty's Rule 26(a)(2) report.

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

When a party offers expert testimony and the opposing party raises a challenge under Rule 702 of the Federal Rules of Evidence, the Supreme Court has made clear in *Daubert v. Merrell Dow Pharmaceutical, Inc.,* 509 U.S. 579 (1993) that the trial court must act as a "gatekeeper" to ensure that speculative and unreliable opinions do not reach the jury.  *Id.* at 589.  In 2000, Rule 702 was amended to conform with *Daubert* and its progeny, *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).  A court should exclude expert testimony unless "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts in the case."  Fed R. Evid. 702.

*Daubert* sets forth a list of factors to consider in determining reliability of a scientific expert opinion, including: "(1) whether the expert's theory could be and has been tested; (2) whether the theory has been subjected to peer review and publications; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community." *Daubert*, 509 U.S. at 592-594.  The same criteria used to assess the reliability of scientific opinion may be used to evaluate the reliability of non-scientific, experience-based testimony.  *Kumho Tire*, 526 U.S. at 152.

This list, however, is not exhaustive. *Kumho Tire*, 526 U.S. at 150 (quoting *Daubert*, 509 U.S. at 593)  The Supreme Court has recognized that while sometimes the specific *Daubert* factors will aid in determining reliability; sometimes other considerations may be more useful, "depending

on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Id.* at 150-51.  The list of *Daubert*'s factors neither necessarily nor exclusively applies to all experts or in every case. *Id.*  The Rule 702 inquiry is "flexible" and the district courts have broad latitude when they decide how to determine reliability. *United States v. Bynum*, 3 F.3d 769, 773 (4th Cir. 1993). Finally, in determining the reliability of the proffered testimony, the focus must be on the soundness of the methodology employed, not on whether the expert reaches the "correct" conclusion. *TFWS, Inc. v. Schaefer*, 325 F.3d 234, 240 (4th Cir. 2003).

The Fourth Circuit has not rendered an opinion with regard to the method of determining damages in an unsuitability case.  Other Circuits have held that in theory, an investor is entitled to recover the difference between what he would have had if the account had been handled legitimately and what he had  in fact at the time the violation ended. *Rolf v. Bly Eastman Dillon & Co.,* 637 F.2d 77, 81 (2d Cir. 1980), *Miley v. Oppenheimer & Co.*, 637 F.2d 318, 326 (5th Cir. 1981) *rev'd on other grounds by Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985).  In *Rolf v. Bly Eastman Dillon & Company*, an investor sustained substantial losses because his investment advisor purchased low quality stocks. *Rolf*, 637 F.2d at 79.  The investor sued the brokerage firm and latter's registered representative on a theory of accomplice liability. *Id.*   In *Rolf*, the Second Circuit ruled that the plaintiff's damages should be calculated by "taking the initial value of the portfolio, adjusting it by the percentage change in an appropriate index during the period,[2] and subtracting the

---

[2]  Courts have held that a judge could decide to use different indices for portfolios consisting of different types of stocks.  For example, for a portfolio consisting of stocks priced at or below $10, Standard & Poor's Low Priced Index should be used as opposed to Standard & Poor's Industrial Stocks Index. *Rolf*, 637 F.2d at 84.  Similarly, the index for a portfolio consisting of stocks in oil companies may be different from that for stocks of domestic automobile producers. *Miley*, 637 F.2d at 328.

value of the portfolio at the end of the period." *Id.* at 84.   Following this method, if the initial value

of a portfolio is $1,000, the end value is $600, and the index chosen fell 10 percent, the plaintiff's

damages would be $300.   Even if the broker managed the portfolio properly, the value of the

portfolio would have declined by 10 percent to $900.   To give the plaintiffs the entire difference

between the initial value of the portfolio would overcompensate the plaintiff $100 at the investment

advisor's expense.   Using the rule set forth in *Rolf*, therefore, the plaintiff's recovery is limited to

$300, which represents the loss resulting from mismanagement, not $400. *Id.*

In a subsequent decision, the Fifth Circuit adopted *Rolf's* formula to determine the loss in

portfolio value in *Miley v. Oppenheimer & Company*.  In *Miley*, an investor advisor "churned" the

investor's account. *Miley*, 637 F.2d at 325.  The court granted the investor both excess commissions

and excess portfolio decline. *Id.* at 326.  In order to measure the portfolio decline, the court affirmed

the trial court's instruction to reduce the out-of-pocket damages award by the average percentage

decline in value of Dow Jones Industrials or Standard & Poor's Index. *Id.* at 328.  As the broker was

only responsible for the damages due to his misconduct, the *Miley* Court instructed that  any

damages calculation, at the very least, should "utilize[] the average percentage performance in the

value of the Dow Jones Industrials or the Standard and Poor's Index during the relevant period as

the indicia of how a given portfolio would have performed in absence of the broker's misconduct."

*Id.*

In the Rule 26(a)(2) disclosures, Mr. Hardesty indicated that in this case he will testify that

SunTrust violated the duty of care it owed to the Dunhems in various respects,[3] and that as a result

---

[3]  As an example of SunTrust's departure from the standard duty of care, Mr. Hardesty's
report focuses on three facts: the assets entrusted were not diversified; SunTrust failed to
recommend the reduction in the line of credit; and the portfolio was subject to excessive use of
leverage or margin borrowing.  Neither party disputes that the Dunhems' accounts were

of this violation, the Dunhems suffered over $1,866,819 in losses.  To calculate these damages, Mr. Hardesty states that he assumed that a prudent advisor would have advised the Dunhems to liquidate their assets on January 1, 2000 and eliminate or substantially reduce the line of credit.  Significantly, liquidating the equities in these accounts on that date would have protected the Dunhems' investment portfolio from the sharp decline that occurred in equity prices between March of 2000 and October of 2002.  In short, Mr. Hardesty has opined that Plaintiffs are entitled to recover the net value of assets under management as of December 31, 1999, interest payments on extension of credit from January 1, 2000 through October 6, 2002, and management fees less any advances or withdrawals made from January 1, 2000 through October 6, 2002.  (Defs.' Mot. Ex. D).

Mr. Hardesty's testimony fails to meet the reliability requirement under Rule 702. According to Mr. Hardesty, this calculation represents Plaintiffs' actual "out of pocket" losses. (Pls.' Mem. to Defs.' Mot. at 23).  Mr. Hardesty calculates "what the value of Plaintiffs' investment portfolio would have been had the line of credit been paid off as of January 1, 2000." *Id.*  Even assuming the Dunhems had paid off the line of credit as of January 1, 2000, the record does not indicate that the Dunhems would have cashed out the remaining stocks and terminated the investment relationship with SunTrust at that time.  In fact, the Dunhems maintained the accounts in SunTrust until they liquidated their accounts on October 6, 2002.  In addition, the Dunhems invested their retirement primarily in securities at their previous brokerage firm.  Based on the record, Mr. Hardesty's assumption that the Dunhems would have liquidated their retirement and kept the funds as cash lacks any justifiable basis.  Instead, this Court finds the reasoning expressed by the *Rolf* and *Miley* courts persuasive and holds that the proper measure of damages in this case

---

concentrated in two equity positions, AOL and MCI Worldcom.

should reflect the difference between the value of the Dunhems' portfolio had SunTrust invested the money "properly" or suitably and the end value of the portfolio.   In other words, in order to determine the amount that would fairly and reasonably compensate Plaintiffs, an expert should account for changes in the standard market indices to indicate how the portfolio would have performed in the absence of misconduct during the relevant period.

In comparison, Mr. Hardesty does not make any reference to any market index in his calculation.  According to Mr. Hardesty, had SunTrust properly managed the accounts, the value of the portfolio in 2002 would have been the same as that in 2000.  Such an assumption ignores the very fact that the market fluctuates every day.  Any investment, no matter how carefully designed, carries the risk of losing in exchange for chances of gaining.  As the Fifth Circuit pointed out, "awarding full 'out of pocket' recovery i.e. the difference between the original and final values . . . [the plaintiff's] portfolio would be to assume, in effect, that none of [the broker's trades] were legitimate, and to disregard the ordinary hazards of the stock market." *Miley,* 637 F.2d at 327. "Such compensation would clearly constitute a windfall for the plaintiff." *Id.*   Because Mr. Hardesty's methodology clearly overestimates Plaintiffs' losses, it does not meet Rule 702's standard for reliability.[4]  For this reason, the Court will exclude Mr. Hardesty's report and testimony on the basis of its reliability deficiencies under Rule 702.

SunTrust also contends that Mr. Hardesty's testimony does not meet the relevance test under Rule 702,  arguing that Mr. Hardesty's damage calculation uses an arbitrary date, not supported by any admissible evidence, and that his calculations will not assist the jury in determining a fact in issue. (Defs.' Mot. at 12-13).  On the other hand, Plaintiffs maintain that because SunTrust should

---

[4]  This Court also notes that in his deposition, Mr. Hardesty admitted that he is not familiar with the methodology to calculate damages in his field (Hardesty Dep. at 84).

have recommended that the Dunhems pay off the line of credit as of January 1, 2000, it is appropriate to use January 1, 2000 as a benchmark in the damage calculation. (Pls.' Mem. to Defs.' Mot. at 23).   While this testimony may be relevant, this Court has previously ruled that Mr. Hardesty's methodology does not meet the requirements of Rule 702.  As this Court decides this issue on an alternate basis, it need not address the issue of relevancy.

## **CONCLUSION**

Although this Court does not question Mr. Hardesty's qualifications,  this Court finds that his methodology disregards the ordinary risk of the market and is not "reliable" within the meaning Rule 702.  Therefore, this Court will GRANT Defendant's Motion.  An Order consistent with this Opinion will follow.

March 2, 2006                                                    /s/
Date                                                    Alexander Williams, Jr.
                                                        United States District Judge