**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

ARNE S. DUNHEM, *et al.*,                           *

                    Plaintiffs,          *
          v.                                              Civil Action No. AW-04-1016
                                                  *
SUNTRUST BANKS, INC.,
                                                  *
                    Defendant.
                              * * * * *

**MEMORANDUM OPINION**

This action involves a suit brought by Arne and Eva Dunhem ("Plaintiffs" or "the

Dunhems") against SunTrust Banks, Inc. ("Defendants" or "SunTrust"), for various state law claims

related to SunTrust's alleged mismanagement of Plaintiffs' retirement funds.  Currently pending

before the Court is Defendant's Motion for Summary Judgment [63].  The Court has reviewed the

entire record, as well as the Pleadings with respect to the instant motion.  No hearing is deemed

necessary.  *See* Local Rule 105.6.  For the reasons stated below, the Court will GRANT in part and

DENY in part Defendant's Motion for Summary Judgment.

**FACTUAL & PROCEDURAL BACKGROUND**

This Court has already summarized the relevant facts in this case in Memorandum Opinions

dated September 1, 2004, November 10, 2004, and March 2, 2006.  The following represents the

pertinent facts taken in the light most favorable to the non-movant.  In December, 1998, Plaintiffs

transferred approximately $3.95 million in securities from Fidelity Investments to SunTrust, through

SunTrust's predecessor in interest Crestar bank.  With the transfer, Plaintiffs placed "essentially 100

percent" of their net worth with the bank.  Plaintiffs opened three accounts for their transferred

assets: two individual revocable trust accounts and a joint revocable trust account.  To establish

these trusts, Plaintiffs executed three separate investment management agreements, each for the respective revocable trust.

At that time, Plaintiffs had a total margin balance of approximately $1.17 million at Fidelity Investments.  SunTrust representatives advised Plaintiffs to open a line of credit with the bank in order to pay off these loan obligations and to provide working capital for erbia, Inc., (*sic*) Plaintiffs' new business venture.  Plaintiffs established a $2.5 million line of credit with SunTrust through the execution of a consumer note on January 7, 1999.  As a condition of this line of credit, SunTrust required that Plaintiffs' collateral securing the line of credit have a value of at least 154 percent of the funds extended.  Several months later, Plaintiffs obtained an additional $300,000 demand note from SunTrust.

Between December 1998 and March 2001, Plaintiffs' assets diminished in value from more than $3.5 million to approximately $850,000.  The decline in the value of Plaintiffs' portfolio as well as the failure of Plaintiffs' venture erbia left Plaintiffs without sufficient income to meet the obligations for their line of credit.  In October of 2002, SunTrust exercised its right to liquidate Plaintiffs' investment accounts to extinguish the outstanding balance on the line of credit.

On February 17, 2004, Plaintiffs filed a Complaint in Maryland state court.  On March 29, 2004, Defendant removed the case to federal court on the basis of diversity jurisdiction.  Plaintiffs' Amended Complaint alleges claims for negligent misrepresentation and omission of materials facts, negligence, and breach of contract.  On August 15, 2005, Defendant filed the instant motion for Summary Judgment and contemporaneously filed a motion to exclude Plaintiffs' expert on damages. In a Memorandum Opinion issued on March 2, 2006, this Court ruled that Plaintiffs' expert did not

meet the requirements of Rule 702, and granted Defendant's Motion.[1]  Currently, Defendant's

Motion for summary judgment is ripe and ready for review.  An Opinion will now issue.

## STANDARD OF REVIEW

Summary judgment is only appropriate if there are no genuine issues of material fact and the

moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *see Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 323-25 (1986).  In a motion for summary judgment, the moving party

discharges its burden by showing an absence of evidence to support the non-moving party's case.

*Celotex*, 477 U.S. at 325.  The court must "draw all justifiable inferences in favor of the nonmoving

party, including questions of credibility and of the weight to be accorded to particular evidence."

*Masson v. New Yorker Magazine*, 501 U.S. 496, 520 (1991) (internal citations omitted).  To defeat

a motion for summary judgment, the non-moving party must come forward and show that a genuine

issue of material fact exists.  *See Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587

(1986).  While the evidence of the non-movant is to be believed and all justifiable inferences drawn

in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation

or compilation of inferences.  *See Deans v. CSX Transp., Inc.,* 152 F.3d 326, 330-31 (4th Cir. 1998);

*Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

A.      Statute of Limitations

As a threshold matter, Defendant argues that it is entitled to summary judgment because the

applicable statute of limitations bars all Plaintiffs' claims.  Maryland statute supplies the rule of law

in this case.  *See generally Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).  Under Maryland law,

---

[1] On March 9, 2006, Plaintiffs filed a motion for reconsideration of the March 2, 2006
decision.  The expert testimony at issue is not essential to the determinations made in this
Opinion, and, therefore, the disposition of the pending motion will not alter this Court's analysis.

a plaintiff must file suit "within three years from the date [the cause of action] accrues unless another provision of the Code provides a different period of time within which an action shall be commenced."  Md. Cts. & Jud. Proc. Code Ann. § 5-101 (2005).

While generally a cause of action accrues on the date of the alleged wrong, Maryland has also adopted the discovery rule, which provides that a plaintiff's cause of action accrues when the plaintiff knows or reasonably should have known of the wrong.  *See, e.g.*, *Poffenberger v. Risser*, 431 A.2d 677 (Md. 1981); *see also Martin Marietta Corp. v. Gould, Inc.*, 70 F.3d 768, 771 (4th Cir. 1995).

In the context of the provision of professional services, an alternate theory, the doctrine of "continuation of events" also may govern the accrual of the cause of action.  The continuation of events theory provides that "in cases where there is an undertaking which requires a continuation of services, or the party's right depends upon the happening of an event in the future, the statute begins to run only from the time the services can be completed or from the time the event happens." *Supik v. Bodie, Nagle, Dolina, Smith & Hobbs, P.A.*, 834 A.2d 170, 179 (Md. 2003) (quoting *Frederick Road Ltd. P'ship v. Brown & Sturm,* 756 A.2d 963, 974 (Md. 2000)).  This theory is derived from the equitable principle of detrimental reliance.  *Id.*  Where the parties enjoy a relationship built on trust and confidence, a party reasonably may rely upon the "good faith of the other party so long as the relationship continues to exist." *Frederick Road Ltd.,* 756 A.2d at 974. Accordingly, the law does not impose a duty on the confiding party to make inquiries about the "quality or bona fides" of the services rendered unless something occurs that gives him or her reason to be suspicious.  *Id.; see also Supik*, 834 A.2d at 179.

Defendant alleges that Plaintiffs cannot avail themselves of either the discovery rule or the

continuation of events doctrine because Defendant claims that Plaintiffs had notice of the alleged

wrong as early as August 2000.  While certain evidence suggests that Plaintiffs knew of the decline

in value of their portfolio, Plaintiffs also state that they relied on SunTrust's assurance that their

investments would regain much of their value.  Because Plaintiffs contend that they received such

assurance, Plaintiffs have demonstrated that a genuine issue of material fact exists regarding whether

Plaintiffs had actual notice of their harm.  This Court will not resolve this factual dispute on a

motion for summary judgment.  The Maryland Court of Appeals has stated that "[t]he date when a

particular plaintiff knows or, with due diligence, objectively should have known of the wrong, is

generally a factual determination for a jury, and not the court." *Supik*, 834 A.2d at 179 (citing

*Frederick Road*, 756 A.2d at 973-74).  As a result, whether Plaintiffs had notice of the alleged harm

before 2002 remains a question of fact, precluding this Court from ruling that Plaintiffs filed this

action outside of the limitations period.

B.      Count I - Negligent Misrepresentation

        Not only does Defendant argue that this Court should award summary judgment based on

the grounds that the statute of limitations bars this action, but it also urges this Court to grant

summary judgment on Count I of the Amended Complaint, misrepresentation and negligent

omission of fact.

        As many issues in this case turn on the nature of the Dunhems' relationship with SunTrust,

the Court must note that this case involves several discretionary accounts. The holder of a

discretionary account agrees to permit an investment broker to make account transactions without

the client's prior approval.  *See Trumball Investments, Ltd. I v. Wachovia Bank, N.A.*, 2006 WL

250783, *2 (4th Cir. Feb. 3, 2006); *Merrill Lynch Pierce Fenner & Smith, Inc. v. Cheng,* 901 F.2d

1124, 1128 (D.C. Cir.1990). A broker who manages a discretionary account generally owes greater

duties to its clients than a broker who operates a non-discretionary account. *Trumball*, 2006 WL 250783, at *2. "Most notably, the broker managing a discretionary account has to make investment decisions that are faithful to the needs and objectives of his client." *Id.* In addition, precedent establishes that a financial adviser for a discretionary account may owe a duty of care to its client. *See Kaufman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 464 F. Supp. 528 (D. Md. 1978); *see also Trumball Investments, Ltd. I*, 2006 WL 250783, *2.

Neither party disputes that SunTrust had discretion to buy and sell securities in the Dunhems' three accounts. The investment management agreements explicitly provide that SunTrust would "purchase and sell securities at your discretion or in accordance with instructions, which may be given by me, as you may deem advisable." (Def. Exs. C & D). When viewing the evidence in the light most favorable to Plaintiffs, the record demonstrates that SunTrust's financial advisors had a duty to the Dunhems.

That the Dunhems' accounts were discretionary accounts alone does not show that Defendant committed the tort of negligent misrepresentation. To prove negligent misrepresentation, a plaintiff must show: (1) that the defendant, owing a duty of care to the plaintiff, negligently asserted a false statement; (2) intending that the plaintiff will act on this statement; (3) with knowledge that the plaintiff will probably rely on the statement, which, if erroneous, would cause loss or injury; (4) that the plaintiff justifiably acted in reliance on the statement; and (5) suffered damage proximately caused by the defendant's negligence. *Jenkins v. PBG, Inc.*, 268 F. Supp. 2d. 593, 596 (D. Md. 2003).

To support their claim of negligent misrepresentation, Plaintiffs claim that: Defendant claimed to have expertise in selecting suitable investment strategies and informed them that they could rely upon Defendant's advice, and Plaintiffs in fact did rely upon this advice to their

detriment.[2]  In particular, Plaintiffs assert that SunTrust made the following representations:

> SunTrust represented that it would prudently manage the Dunhems' investment assets.

> SunTrust represented that it would provide professional and comprehensive management of all the Dunhem's financial affairs

> SunTrust represented that all actions taken by SunTrust would be in the Dunhems' best interest.

> SunTrust represented that it would continuously monitor the Dunhems' financial situation and make changes based upon the Dunhems' evolving needs.

> SunTrust represented that the portfolio of investments would properly be managed in a manner suitable to the Dunhems' age, net worth, financial circumstances, investment objectives and ability to assume risk.

> SunTrust represented that obtaining and utilizing a $2.5 [million] line of credit collateralized by the Dunhems' retirement savings was appropriate and suitable.

> SunTrust represented that any losses in the value of the portfolio were only temporary and that the value of the portfolio of investments would be restored.

> SunTrust represented that it was inappropriate to liquidate the investment assets at various times when it would have resulted in the Dunhems' being able to salvage significant portions of their retirement savings net of the line of credit balance.

Not all statements that prove false are actionable.  For example, the Maryland Court of Appeals has held that an action for negligent misrepresentation based on promise of future conduct requires an additional element of proof.  Specifically, "[i]n order for a negligent misrepresentation claim based upon a promise of future conduct to be actionable, the party making the representation

---

[2] This Court notes that previously in its September 1, 2004 Memorandum Opinion, this Court ruled that promotional materials provided to Plaintiffs could not serve as the basis of their claims for negligent misrepresentation.

regarding its future conduct must know, at the time it makes the representation, that it does not intend to carry out the promise – that the representation is false." *Heritage Oldsmobile-Imports v. Volkswagen of America, Inc.,* 264 F. Supp. 2d 282, 291 (D. Md. 2003) (citing *Miller v. Fairchild Indus.,* 629 A.2d 1293, 1302 (Md. 1993)).

With respect to the first five statements, it appears unclear when SunTrust allegedly made these representations.  In fact, none of the exhibits attached to Plaintiffs' Motion in Opposition indicate specifically *who* made these representations.  Indeed, Plaintiffs' list of misrepresentations closely mirrors the allegations of Plaintiffs' Amended Complaint.  As this Court noted in an earlier Memorandum Opinion:

> In the Complaint, Plaintiffs state that SunTrust's printed materials provide, *inter alia*, that:"Private Banking can handle all of the challenges involved in maximizing your investments. Additionally we offer Crestfunds, a family of mutual funds, as well as a range of other funds . . . so your complete financial plan will help meet your particular needs." Complaint, ¶ 11.  This language is insufficient to substantiate a claim of negligently asserted false statements.  Instead, the language appears to set forth the general services provided by SunTrust.  Plaintiffs further contend that SunTrust indicated it would, "prudently manage Plaintiffs' investment assets," "provide professional and comprehensive management of all of Plaintiffs' financial affairs;" take actions in "Plaintiff's best interests and not in the best interests of SunTrust;""continuously monitor Plaintiffs' financial situation and make changes based upon Plaintiffs' evolving needs;" and properly manage Plaintiffs' portfolio of investments in a suitable manner."  Complaint, at ¶ 29.  Again, these assurances appear to be representations of the general services SunTrust provides its customers; they are not statements that can subject Defendant to a negligent misrepresentation claim.

A vague statement, indefinite in its nature, cannot suffice to support an action for negligent misrepresentation because "such indefinite representations ought to put the person to whom they are made, upon the inquiry, and if he chooses to put faith in such statements, and abstained from inquiry, he has no reason to complain." *Buschman v. Codd,* 52 Md. 202, 207 (1879); *see also Goldstein v.*

*Miles*, 859 A.2d 313, 332 (Md. Ct. Spec. App. 2004).  Plaintiffs have not presented proof that at the time SunTrust made these representations that it had the requisite intent.  Even if SunTrust representatives made these assurances, no evidence indicates that they knew or even had reason to know that these representations were false.

Unlike the first five statements, the records reflects that SunTrust representatives made statements about the $2.5 million line of credit at various times during the time that the Dunhems' banked with SunTrust.  In a declaration, Mr. Dunhem has stated that Mark Avallone ("Avallone"), an officer of SunTrust provided him with advice as to the line of credit on numerous occasions and told him that "utilizing the line of credit was appropriate for me and my family." (Arne S. Dunhem Decl. ¶ 5).

Even viewing the evidence in the light most favorable to Plaintiffs, Plaintiffs have not carried their burden of showing that a material issue of fact exists on the claim of negligent misrepresentation with respect to this statement.  Plaintiffs have established only a vague connection between this statement and Plaintiffs' injuries.  In particular, Plaintiffs have not stated when these representations were made, though the truth or falsity of the statement depends on Plaintiffs' financial circumstances at the time of this representation.  For example, if at the time Defendant made this statement, Plaintiffs had sufficient assets to extinguish the line of credit, no reasonable juror could find that Defendant's statement was a negligent misrepresentation.  Even in their opposition to summary judgment, Plaintiffs have not provided evidence that the line of credit was not appropriate when Plaintiffs began their banking relationship with SunTrust when the value of their assets far exceeded the amount of the line of credit.  That Plaintiffs had a line of credit at Fidelity Investments, their previous brokerage firm underscores this fact.  Furthermore, the Court finds it troubling that Plaintiffs have failed to testify to specific statements made by SunTrust

regarding this representation.  As a result, Plaintiffs cannot recover for this statement on a theory of negligent misrepresentation.

Furthermore, the evidence cited by Plaintiffs does not reflect that SunTrust employees ever advised Plaintiffs "it was inappropriate to liquidate the investment assets" and extinguish the line of credit. The Answers to Interrogatories merely contain bare allegations without any reference to specific events or conversations and cannot alone establish the existence of a genuine issue of material fact.  In addition, Plaintiffs refer to the deposition of Mark Avallone to show that SunTrust rendered the alleged advice on the line of credit.  Avallone's deposition testimony, however, simply does not contain any indication that Avallone every advised the Dunhems *against* paying off the line of credit.  Instead, Avallone testified that he assisted the Dunhems in obtaining a renewal of the line of credit at Mr. Dunhem's request.  Avallone states that seeking a renewal of the line of credit "was done at the request of the client [Mr. Dunhem] for the client's interest at this point."  (Avallone Dep. 247).  At no point does Avallone state that he told the Dunhems not to extinguish the line of credit, he only states that he advocated at their behest.  While, as addressed below, Avallone's behavior may have given rise to another legal claim, the record does not show that he represented that it was inappropriate for the Dunhems to pay off the line of credit.

This Court, however, will not grant summary judgment on Plaintiff's allegation that SunTrust representatives stated that any losses to their portfolio were "temporary."  In particular, Plaintiffs allege, "SunTrust represented that any losses in the value of the portfolio were only temporary and that the value of the portfolio of investments would be restored."  As stated in Section B, *supra*, evidence indicates that SunTrust had certain fiduciary responsibilities with respect to the three trust accounts.  It has also proved false that "losses in the value of the portfolio were only temporary and that the value of the portfolio of investments would be restored."   In addition, Mr.

10

Dunhem has testified that normally he took the advice of SunTrust's representatives.  This past conduct suggests  that Defendant knew that the Dunhems would probably rely on its alleged statement that Plaintiffs' losses were only "temporary," and Plaintiffs have averred that they relied on this representations in determining how to invest their retirement.

A showing of actual reliance, however, is not enough to carry Plaintiffs' burden on a motion for judgment.    To make out a case for negligent misrepresentation, a plaintiff must also demonstrate that this reliance was justifiable or reasonable.   In resolving the issue of justifiable reliance, courts may look at the experience and background of the party asserting that it relied on the statement.  *See Goldstein v. Miles*, 859 A.2d 313, 333 (Md. 2004); *Parker v. Columbia Bank,* 604 A.2d 521 (Md. Ct. Spec. App.  1992) (considering the relying party's experience in the area of the transaction that occurred).  Plaintiffs in this case cast themselves as unsophisticated investors who believed SunTrust's representations, and under these circumstances, it may have been reasonable for Plaintiffs to rely on any statements that the losses to their portfolio were only "temporary."   Generally, a court should not make determinations regarding credibility on a motion for summary judgment.  *See Girard v. Gill*, 261 F.2d 695, 697 (4th Cir. 1958) (on a motion for summary judgment, a "court should not attempt to determine questions of credibility . . . [and] all doubts as to the existence of a genuine issue as to a material fact should be resolved against the moving party").   It  follows,  therefore,  that  Plaintiffs  have  produced  enough  evidence  to demonstrate an issue of fact exists as to whether Defendant, owing a duty of care to the plaintiff, negligently asserted a false statement, intending that Plaintiffs would act on this statement, with knowledge that Plaintiffs would probably rely on the statement, which, if erroneous, would cause loss or injury, and that Plaintiffs justifiably acted in reliance on the statement.

Defendant argues that even if Plaintiffs can establish the other elements of negligent

misrepresentation that Plaintiffs cannot prove proximate cause.  Generally, Maryland law considers causation a question of fact for the jury.  *See Weisman v. Connors,* 540 A.2d 783, 798 (Md. 1988). Adjudging this part of Plaintiffs' negligent misrepresentation claim would require the Court to rule of disputes of material fact, and as such, summary judgment is inappropriate.

In sum, while the Court will grant summary judgment on the remainder of the negligent misrepresentation claims, it will deny summary judgment with respect to any alleged statements that Plaintiffs' losses were temporary.

C.    Count I - Negligent Omission of Material Facts

Defendants also seek summary judgment on Plaintiffs' claims for negligent omission of material fact.  Although the Maryland Court of Appeals has not specifically recognized a claim for negligent omission of fact, the court has countenanced such a cause of action, stating that "if a party to a transaction is under a duty to speak, the failure to speak may, under appropriate circumstances in an action founded on negligent misrepresentation, constitute a representation."  *Leonard v. Sav-A-Stop Servs., Inc.*, 424 A.2d 336, 340 (Md. 1981).  Negligent omission occurs where a defendant represents only "half of the relevant picture without disclosing the remaining facts."  *Lubore v. RPM Assoc., Inc.*, 674 A.2d 547, 561 (Md. Ct. Spec. App. 1996).  As stated in an earlier memorandum opinion, this Court has determined that negligent omission also may occur as a result of misleading and deceptive talk, acts, conduct, or misrepresentation and an affirmative suppression of the truth. *See Lubore*, 674 A.2d at 556 (citing *Finch v. Hughes Aircraft Co.*, 469 A.2d 867, 891 (Md. Ct. Spec. App. 1984).

Plaintiffs allege that Defendant failed to disclose to Plaintiffs that: (1) the failure to pay off the balance on the line of credit in February 2000 would maximize management fees and interest payable to SunTrust; (2) the portfolio of investments was not properly allocated and diversified

among asset classes based upon Plaintiffs' age, net worth, financial circumstances, investments and ability to assume risk; (3) SunTrust's Private Bankers were compensated under an incentive-based compensation system; (4) the Private Bankers assigned to the Dunhems failed to meet SunTrust's internal qualifications for securities licensing and certified financial planner accreditation; (5) the highly leveraged nature of the portfolio placed Plaintiffs' retirement savings in real danger of total liquidation which could and did result in the total loss of Plaintiffs' retirement savings; and (6) the Dunhems did not satisfy the bank's internal credit policies.

First and foremost, this court must note that Plaintiffs have not proffered evidence that their failure to pay off the credit line would maximize management fees.  In addition, ordinary prudent people standing in the shoes of Plaintiffs would know their failure to pay a balance on a line of credit, or a loan, would result in additional interest being charged to their account.  Plaintiffs previously traded in a margin account at Fidelity.  In a margin account, the broker lends the customer money to purchase securities, with the purchased securities and cash serving as collateral, and the broker charges interest on this loan.  Plaintiffs previously had invested with borrowed funds, and without additional evidence, no reasonable juror could find that Plaintiffs were unaware of the fact that their use of this borrowed money would result in the payment of interest to SunTrust.

On the other hand, a question of fact exists as to the remaining omissions that Plaintiffs allege. Even Defendant's expert has opined that some of Plaintiffs' losses were directly attributable to the fact that their portfolio was heavily weighted with telecommunications and internet stocks, (Comment Dep. 42).  A finder of fact could reasonably conclude that any failure of SunTrust to inform Plaintiffs of this overweighting was material, that Defendant affirmatively suppressed the truth or whole picture, that Plaintiffs reasonably relied on the omission, which proved erroneous, and that Plaintiffs suffered damage proximately caused by the defendant's negligent omission.

13

Similarly, this Court finds that a jury should determine whether the following omissions constituted negligent omissions of material facts: that SunTrust allegedly failed to disclose the details of their compensation system, that the Dunhems' Private bankers did not meet SunTrust's internal qualifications, that the leveraged nature of their portfolio placed them at risk of losing their retirement savings, and that the Dunhems did not satisfy SunTrust's internal credit policies for extending the Dunhems' line of credit.   Even some executives at SunTrust questioned the appropriateness of extending credit to the Dunhems (Pl. Opp. Exs. W & X) based on their financial circumstances, and there exists a question of material fact as to whether Defendant omitted this vital information.   Again, this Court will not address the issue of proximate cause on a motion for summary judgment.  Because this Court cannot say as a matter of law that Defendant's failure to inform the Dunhems of these facts did not cause Plaintiffs' injuries, this Court will deny summary judgment on Count I for the five alleged omissions outlined above.

A.      Count II - Negligence

This Court has previously ruled that SunTrust's advisors owed a duty to the Dunhems with respect to the discretionary accounts.  Where, as here, a financial manager has discretion to buy and sell securities, that person has a duty to exercise care in investing the entrusted funds.

Defendant argues that Plaintiffs cannot recover for negligence because Plaintiffs also make claims for breach of contract based on the facts and cite the case of *Wilmington Trust Company v. Clark*, 424 A.2d 744 (Md. 1981) in support of this proposition.  The facts in that case, however, render its holding inapplicable to the case at bar.  In *Wilmington Trust Company*, the plaintiff brought an action sounding in both contract and tort against the estate of her former husband who had committed suicide.  Plaintiff alleged that the suicide breached their spousal support agreement and constituted an actionable tort.  Holding that the suicide and alleged breach of the agreement

14

alone could not give rise to a cognizable tort claim, the Maryland Court of Appeals explained that "the duty giving rise to the tort cause of action must be independent of the contractual obligation." *Id.* at 754.

In this case, Plaintiffs do not merely allege breach of contract, but that Defendant breached its duty to prudently and reasonably exercise the discretion given to it by Plaintiffs.  Indeed, numerous courts have recognized that a broker or investment adviser with discretionary authority to buy and sell the assets of an account owes a duty to the holder of the account. *Trumball Investments, Ltd. I*, 2006 WL 250783, at *2 (stating "[i]n return for [the] grant of discretion, a broker operating a discretionary account typically owes greater duties to his client than a broker who must receive authorization for each transaction."); *Cheng,* 901 F.2d at 1128 (D.C. Cir.1990) (noting that many courts have held that a broker for a discretionary account generally owes a fiduciary duty to his client); *Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc.,* 157 F.3d 933, 940-41 (2d Cir.1998) (same); *Hill,* 790 F.2d at 824 (same); *see also Leib v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 461 F. Supp. 951, 953 (E. D. Mich. 1978) (describing a broker operating a discretionary account as "the fiduciary of his customer in a broad sense"); *cf. Wolf v. Ford*, 644 A.2d 522. 537 (Md. 1994) (recognizing that a party may bring an action for negligence against a broker of a discretionary account, but ruling that "[i]f the parties to a contract determine that one party will bear the burden of another party's simple negligence, they are entitled to do just that.  This is particularly important where an account is accepted on a discretionary basis, as in the instant case, and the investor asks the broker to purchase stocks using the broker's best judgment.").  After reviewing these cases, it appears clear that the Plaintiffs may maintain an action for negligence against Defendant and have sufficiently alleged a duty apart from Defendant's contractual duties.

This Court does not reach the same conclusion with respect to the line of credit and the

allegations in the Amended Complaint pertaining to Plaintiff's "entire circumstances." The line of credit was a non-discretionary account at SunTrust. Unlike a discretionary account, a non-discretionary account requires a broker to obtain authorization before making any investment decisions. *See Trumball*, 2006 WL 250783, at *2; *see also Cheng,* 901 F.2d at 1128; *Hill*, 790 F.2d at 820 n. 3. For these reasons, the majority of circuits have held that a broker-dealer has no duty to determine the suitability of an investor's trades or to prevent the customer from losing money in a non-discretionary account. *See id*.; *see also Hill v. Bache Halsey Stuart Shields Inc.,* 790 F.2d 817, 825 (10th Cir.1986) ("fiduciary duty in the context of a brokerage relationship is only an added degree of responsibility to carry out pre-existing, agreed-upon tasks properly"). Maryland courts have not addressed this issue, but this Court finds the reasoning of *Trumball* and that of other courts persuasive and finds that SunTrust did not have a fiduciary duty to Plaintiffs with respect to the line of credit. Furthermore, in their brief, Plaintiffs fail to present any evidence or cite any law that would support their initial contention that SunTrust had an independent duty manage the line of credit.[3]

As a result, the Court will grant summary judgment with respect to all of Plaintiffs' claims of negligence insofar as they relate to the line of credit, but will deny summary judgment on the issue of negligence with respect to the discretionary accounts.

B.    Count III - Breach of Contract

To determine whether SunTrust breached the contract, the Court must turn to the language of the document. In particular, Plaintiffs claim that Defendant breached the following provisions

---

[3] Specifically, Plaintiffs failed to provide evidence to support their claims that Defendant breached its duty by: "(a) misrepresenting the risk and suitability associated with leveraging all of Plaintiffs' retirement savings; [and] (b) failing to reduce the indebtedness due under the line of credit during the time periods when the assets under management were experiencing growth."

in the investment management contracts:

> You are authorized to manage the account as you, in your sole discretion shall deem [our] best interest.  In the exercise of your discretion in good faith, you may invest the assets of the account in securities, in short-term money market funds, in mutual funds or investment trusts . . . .

(Def. Exs. C, D, E).  Defendant has argued that Plaintiffs' allegations do not imply that Defendant breached the terms of the contracts.

Generally, the construction of a contract is a question of law, not a question of fact, and within the province of the court.  *See Rothman v. Silver,* 226 A.2d 308, 310 (Md. 1967) ("If a written contract is susceptible of a clear, unambiguous and definite understanding . . . its construction is for the court to determine").   Under Maryland law, a court must first examine the language of the contract to determine its meaning.   *Wells v. Chevy Chase Bank*, 768 A.2d 620, 630 (Md. 2001). While the character of the contract, its object and purposes, and the factual circumstances of the parties at the time of execution may assist in interpreting the meaning of a particular contractual provision, clear and unambiguous language must be enforced as written.  *See id*; *Auction & Estate Representatives, Inc. v. Ashton,* 731 A.2d 441, 444 (Md. 1999).

Even construing the terms of the investment management contracts against SunTrust, no genuine dispute exists as to whether SunTrust breached these contracts.  Plaintiffs' Amended Complaint alleges that Defendant agreed to: (1) "manage the accounts properly and in accordance with the statutory, regulatory and common law duties of care and diligence owed by Defendants"; (2) "select suitable investments and investment strategies"; and (3) "continuously monitor Plaintiffs' financial circumstances, investment objectives, risk tolerance so to adjust the investments and investment strategies in the accounts accordingly."   It appears that Plaintiffs read all these

17

guarantees into Defendant's promises to act in their "best interest" and in "good faith." Plaintiffs, however, do not direct this court to any authority or evidence that would give substance to these terms.

Absent any additional evidence, this Court declines to read this provision so broadly. The Maryland Court of Appeals has instructed that in applying the objective test for contract interpretation, "The true test of what is meant is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant." *Cloverland Farms Dairy, Inc. v. Fry*, 587 A.2d 527, 530 (Md. 1991); *see also Kiley v. First Nat. Bank of Maryland*,, 649 A.2d 1145, 1154 (Md. 1994). Viewed as a whole, the document does not make any reference to Defendant's statutory, regulatory, and common law duties nor does it speak about Defendant's alleged duty to choose suitable investments and monitor Plaintiffs' financial circumstances. Each contract focuses on the particular account, not Plaintiffs' entire portfolio. This silence leads the Court to the conclusion that a reasonable person in the position of the parties would not have thought that each agreement made all of the representations that Plaintiffs have alleged.[4] Therefore, to the extent the Plaintiffs breach of contract claim is based on SunTrust's lack of "good faith" and failure to act in their "best interest," Defendant is entitled to summary judgment on that claim.

## <u>CONCLUSION</u>

For the aforementioned reasons, this Court will DENY in part and GRANT in part

---

[4] Even if this Court were to interpret the contracts as Plaintiffs suggest, this Court nevertheless would be compelled to grant summary judgment on this claim. Plaintiffs have not adduced evidence that SunTrust acted in anything other than good faith, and this Court will not infer bad faith, nor have Plaintiffs offered any authority that employs their interpretation of "best interest."

Defendant's Motion for Summary Judgment [63].  An Order consistent with this Opinion will follow.

March 23, 2006                                                    /s/
Date                                              Alexander Williams, Jr.
                                                  United States District Judge