## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## SOUTHERN DIVISION

| | | |
|---|---|---|
| ARNE S. DUNHEM, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | | Civil Action No. AW-04-1016 |
| | * | |
| SUNTRUST BANKS, INC., | | |
| | * | |
| Defendant. | | |

\* \* \* \* \*

## MEMORANDUM OPINION

Currently pending before the Court are Plaintiffs' Motion for Reconsideration of the Court's

Memorandum Opinion dated March 2, 2006 [79], Plaintiffs' Motion for Reconsideration of this

Court's Memorandum dated March 23, 2006 [85], and Defendant's Motion to Strike [91]. The Court

has reviewed the entire record, as well as the pleadings with respect to the instant motions.  No

hearing is deemed necessary.  *See* Local Rule 105.6 (D. Md. 2004).  For the reasons stated more

fully below, the Court will deny both of Plaintiffs' motions for reconsideration and grant the motion

to strike.

## FACTUAL AND PROCEDURAL BACKGROUND

This Court has already summarized the relevant facts of this case in several Memorandum

Opinions dated September 1, 2004, November 10, 2004, March 2, 2006, and March 23, 2006.

On March 23, 2006, this Court granted Defendant's Motion in Limine to exclude Plaintiffs'

expert James Hardesty ("Hardesty") on the ground that Hardesty did not calculate damages with a

method that was reliable as required by Rule 702 of the Federal Rules of Evidence.  This Court

indicated that the more appropriate method of determining damages in an unsuitable investment

case, as outlined in *Rolf v. Bly Eastman Dillon & Co.*, 637 F.2d 77, 81 (2d Cir. 1980) and *Miley v.*

*Oppenheimer & Co.*, 637 F.2d 318, 326 (5th Cir. 1981), *rev'd on other grounds by Dean Witter*

*Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985), is to factor in the average percentage performance of an appropriate index during the relevant investment period in order to exclude market fluctuations from the calculation of damages. Hardesty did not make such a calculation in his original materials, but, instead, adopted the calculations made by Plaintiffs' counsel and measured Plaintiffs' damages by calculating the amount in Plaintiffs' investment account on December 31, 1999, less the value of Plaintiffs' line of credit as of December 31, 1999, and less withdrawals and advancements made against the line of credit between January 1, 2000 and October 6, 2002. Apparently, Hardesty chose January 1, 2000 because SunTrust renewed Plaintiffs' line of credit on that date, which he asserts is indicative of Defendant's mismanagement, alleging SunTrust should have reduced or substantially eliminated the line of credit by that date. While Hardesty posits that SunTrust should have diversified the portfolio into stocks, bonds, and money market accounts,[1] he did not calculate damages comparing a well managed, diversified account with the account that SunTrust managed. Hardesty also admitted in his deposition that he was not familiar with the methodology generally used to calculate damages in cases such as the one at bar. For these reasons, the Court found that Hardesty did not utilize a reliable methodology in calculating damages and did not reach the issue of relevance. On March 9, 2006, Plaintiffs filed a Motion for Reconsideration of the March 2, 2006 Order.

On March 23, 2006, this Court ruled on Defendant's Motion for Summary Judgment. This order granted-in-part and denied-in-part Defendant's request for summary judgment. The order entered summary judgment in favor of Defendant on Count I, Plaintiffs' claims of negligent

---

[1] As of December 31, 1999, Plaintiffs' investment portfolio included some bonds, but about 65% of the investments were in the form of MCI Worldcom and America Online stock.

misrepresentation, except on their claim that Defendant asserted their losses were "temporary." In addition, the order granted summary judgment in favor of Defendant on Plaintiffs' claims of negligent omission insofar as those claims related to the payment of management fees and interest. The order granted summary judgment on Plaintiffs' negligence claim as it related to their line of credit. Finally, the order on granted summary judgment on Count III, Plaintiffs' claim for breach of contract. The order, however, denied summary judgment on all the remaining claims, including the majority of Plaintiffs' claims for negligent misrepresentation of material fact and negligence with respect to their three main investment accounts.

On April 3, 2006, Plaintiffs filed a Motion for Reconsideration of this Court's March 23, 2006 Order. In their briefs for this motion for reconsideration, Plaintiffs rely on the expert testimony of Hardesty that this Court previously has excluded. As a result, Defendant filed a Motion to Strike Plaintiffs' expert disclosure as incomplete and untimely. These motion are ripe and ready for resolution, and an Opinion shall now issue.

**I.**    **Plaintiffs' Motion for Reconsideration of the Court's Decision to Exclude Their Expert**

As many of Plaintiffs' arguments turn on the admissibility of Hardesty's opinions, this Court will begin by analyzing Plaintiffs' Motion for Reconsideration of the March 2, 2006 Order.

A.    Standard of Review for Reconsideration of an Interlocutory Order

Both parties agree that the order excluding Plaintiffs' expert is an interlocutory order, and, as a result, the Court maintains the power to modify, vacate, or set aside the order in the interest of substantial justice. *Group Dealer Serv., Inc. v. Southwestern Bell Mobile Sys.,* 2001 WL 1910565, *3 (W.D. Tex. 2001) (citing Fed. R. Civ. P. 54(b) and *Baustian v. Louisiana,* 929 F. Supp. 980, 981 (E.D. La.1996)) (citations omitted). Although a court may modify an interlocutory order at any

time, a court will grant a motion for reconsideration only if a party sets forth "facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *California v. Summer Del Caribe, Inc.,* 821 F. Supp. 574, 578 (N.D. Cal. 1993) (internal quotation and citations omitted).

B.       The Exclusion of Hardesty

Plaintiffs argue that this Court granted Defendant's Motion in Limine based on errors of law and should reverse its ruling excluding Hardesty's testimony.  In the alternative, Plaintiffs request leave for Hardesty to amend his report and recalculate damages using the *Rolf/Miley* methodology.

"Reliable expert opinion must be based on scientific, technical, or other specialized knowledge and not on belief or speculation, and inferences must be derived using scientific or other valid methods." *Oglesby v. General Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999).  Pursuant to Rule 702, a district court must act as a gatekeeper and ensure that the scientific testimony or evidence to be admitted is both relevant and reliable.  Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). Consequently, analyzing the testimony and evidence, a court must consider several factors, including: "(1) whether a theory or technique can be or has been tested; (2) whether it has been subjected to peer review and publication; (3) whether a technique has a known or potential rate of error and the existence of standards controlling its operation; and (4) whether the theory or technique enjoys general acceptance in a relevant scientific community." *Daubert,* 508 U.S. at 589.

Although courts have not adopted one uniform method for calculating damages in unsuitable investment cases, courts have recognized two principal methods: "(1) computing actual loss to the account as a result of the broker's trading, referred to as 'out-of-pocket losses,' [or] (2) determining the amount of potential gain lost as a result of the broker's misconduct, sometimes referred to as the

'well-managed account' measure." Nancy E. Reich, *Proving Damages Caused by Securities Brokers' Excessive, Unsuitable, or Unauthorized Trading*, 35 AMJUR POF 3d 161 § 12 (2006). "Out-of-pocket" damage calculations compare the investment account before and after the broker's misconduct minus any decline in the market during the relevant investment period as indicated by a standard market index. *See, e.g., Rolf,* 637 F.2d at 84. Conversely, a "well-managed account" damage calculation compares the broker's negligent strategy of investment with a more appropriate strategy of investment. *Davis v. Merrill Lynch, Pierce, Fenner & Smith,* 906 F.2d 1206 (8th Cir. 1990).

In his reports, Hardesty states that Plaintiffs have incurred out-of-pocket damages and well-managed account damages. As Hardesty's report did not include calculations that would depict losses based on a well-managed diversified portfolio, this Court could rule only on the out-of-pocket damage calculations.

Plaintiffs argue that this Court incorrectly relied on *Rolf* and *Miley* in its decision to exclude Hardesty's testimony because neither Maryland nor the Fourth Circuit has adopted the *Rolf/Miley* methodology for calculating damages. Plaintiffs assert that Maryland law governs, as illustrated by *Hinkle v. Rockville Motor Co.*, 278 A.2d 42 (Md. 1971) and *Goldstein v. Miles*, 859 A.2d 313, 324-25 (Md. 2004). In the alternative, if federal law is deemed persuasive, Plaintiffs contend that the contrary view to the *Rolf/Miley* position has been adopted by the Fourth Circuit in *Carras v. Burns*, 516 F. 2d 251 (4th Cir. 1975).

This Court finds *Hinkle* and *Goldstein* inapposite because both are fraud cases and do not involve mismanagement of investment securities. *Carras* is more applicable because it involves

churning claims against brokerage firms.[2]  The plaintiffs in *Carras* sought a calculation of damages

for their lost equity "as measured by the difference in the value of the [investment] account before

and after churning."  The *Carras* court limited the plaintiff's damages to "ascertainable losses to the

account, including commissions, service charges, and taxes attributable to trading." The *Carras*

court went on to state that "[a]ny attempt to apportion loss of equity in this margin account between

churning and the ordinary hazards of a declining market would be unduly speculative." Plaintiffs

interpret *Carras* to hold that a *Rolf/Miley* market-adjusted damage analysis is "unduly speculative"

because the *Rolf/Miley* analysis quantifies the ordinary hazards of the market.  However, the *Carras*

court echoes the concern that this Court expressed in its ruling on the Motion in Limine, regarding

the fact that a common law calculation of out-of-pocket damages does not take into consideration

the ordinary hazards of the market.  Indeed, *Carras* cites *Stevens v. Abbot, Proctor & Paine*, another

churning case, in which that court rejected the out-of-pocket measure of damages because this

method did not clearly calculate plaintiff's injury caused by defendant's churning, but rather

improperly included market fluctuations in the calculation of the plaintiff's damages.  288 F. Supp.

836, 850 (E.D. Va. 1968) ("[R]egardless of how unsophisticated and financially naive the plaintiff

was, she is bound to have known that one who deals in the stock market, regardless of in how

conservative a manner, stands not only the chance to have her securities appreciate in value, but

likewise stands the chance that same may depreciate.")

When Plaintiffs filed their Motion for Reconsideration, the Fourth Circuit had not expressly

considered the *Rolf/Miley* analysis, but three months later, the Fourth Circuit decided *Parmenter v.*

---

[2]  Churning describes the act of excessively trading the equity assets of an investor's
account to increase fees. *Churning by Securities Dealers*, 80 Harv. L. Rev. 869 (1967).

*Rollins Financial*, No. 05-1189, 2006 WL 1791332 (4th Cir. June 29, 2006) (unpublished) (per curiam).  In *Parmenter*, the court acknowledged that the "general method . . . [of] calculat[ing] damages [by] comparing actual investment results to those that could have been achieved had the account been properly managed–is generally accepted and reliable." *Id.* at *2 (citing *Rolf*, 637 F.2d at 84).

Plaintiffs also argue that Defendant failed to properly raise the *Rolf/Miley* methodology in the Motion in Limine and only did so in its reply to Plaintiffs' response to the Motion in Limine. A court may consider an argument first presented in the reply if the opposing party has time to oppose the argument in a surreply memorandum. *Three D Departments, Inc. v. K Mart Corp.*, 732 F. Supp. 901, 905 (N.D. Ill. 1990). In Plaintiffs' memorandum in support of their Motion for Reconsideration, Plaintiffs state that they were "prevented from properly responding to Defendants'(sic) newly raised argument, because the filing of a surreply memorandum without leave of Court is prohibited by Local Rule 105.2."  Nonetheless, Plaintiffs did not actually request leave of this Court to submit a surreply memorandum.

In the alternative, Plaintiffs argue that if their request to amend the expert testimony, so as to comply with the *Rolf/Miley* analysis, is denied, they would be materially prejudiced.  Even in the amended report, it appears that Hardesty did not perform the calculations, but rather obtained another firm to construct a model portfolio.  Based on this fact, along with Hardesty's earlier admission that he is not familiar with the methodology used in suitability cases, this Court declines to relinquish its role as gatekeeper and admit Plaintiffs' revised version of their expert's testimony.  Although Plaintiffs may suffer some prejudice from this decision, a plaintiff should not be given a second opportunity to "marshal other expert opinions and shore up his case" following a *Daubert*

ruling that his expert witness's testimony is inadmissible. *Nelson v. Tenn. Gas Pipeline Co.*, 243

F.3d 244, 250 (6th Cir. 2001), *cert. denied*, 534 U.S. 822, 151 L. Ed. 2d 25, 122 S. Ct. 56 (2001).

*See also Lippe v. Bairnco Corp.*, 249 F. Supp. 2d 357, 386 (S.D.N.Y. 2003) ("When a party loses

at trial or when it loses a summary judgment motion, it does not get to do it again.... [t]he party's

recourse is to appeal, and only if it prevails on appeal will it get another chance. A *Daubert* motion

is no different").

Because this Court will deny Plaintiffs' motion for this Court to reconsider the exclusion of

their expert, it will grant Defendant's Motion to Strike Plaintiffs' untimely disclosure.

**III.     Plaintiffs' Motion for Reconsideration of the Court's Summary Judgment Order**

Having decided Plaintiffs' first motion for reconsideration, the Court turns next to the

Motion for Reconsideration of its March 23, 2006 Order.

A.     Standard of Review for Reconsideration of a Final Order

The standard for reconsideration of a final judgment is well-settled.  A court may grant a

motion for reconsideration under Fed. R. Civ. P. Rule 60(b) in limited circumstances where equity

requires reconsideration. *See generally* Wright & Miller, 11 Federal Practice and Procedure § 2857.

Because Rule 60 is an extraordinary remedy, "[A] motion to reconsider is not a license to reargue

the merits or present new evidence." *Royal Ins. Co. of Am. v. Miles & Stockbridge, P.C.*, 142 F.

Supp. 2d 676, 677-78 n.1 (D. Md. 2001).  As a result, reconsideration is warranted only because of:

(1) a change in controlling law; (2) the availability of new evidence; or (3) the need to correct a clear

error or prevent manifest injustice." *Bogart v. Chapell*, 396 F.3d 548, 555 (4th Cir. 2005); *Potter*

*v. Potter*, 199 F.R.D. 550, 552 (D. Md. 2001) (internal citations omitted).  Plaintiffs do not direct

the Court's attention to any intervening changes in the controlling law and does not present any new

evidence that was previously unavailable.  The only question, therefore, is whether reconsideration

should be granted to correct a clear error or to prevent a manifest injustice.

B.      Count I

Plaintiffs challenge various portions of the previously issued Memorandum Opinion as

clearly erroneous. With respect to Count I, Plaintiffs request that the Court revise its ruling granting

summary judgment on Plaintiffs' claims of negligent misrepresentation with respect to the line of

credit. In its March 23, 2006 order, the Court noted that Plaintiffs "failed to testify to specific

statements made by SunTrust regarding this representation."  In their motion for reconsideration,

Plaintiffs point to Mr. Dunhem's declaration, which states that he inquired "[o]n more than one

occasion" about completely eliminating the line of credit and that SunTrust advised that "it would

be a mistake to do so."  That a plaintiff's own self-serving affidavits or declarations cannot defeat

a motion for summary judgment is widely recognized. *Nat'l Enterprises, Inc. v. Barnes*, 201 F.3d

331, 335 (4th Cir. 2000) (holding that a plaintiff's description of an agreement was insufficient to

avoid summary judgment); *accord Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).

Therefore, this Court's refusal to credit this declaration was not clearly erroneous.

Moreover, Plaintiffs' deposition testimony does not persuade this Court that SunTrust

affirmatively dissuaded Plaintiffs from extinguishing the line of credit.  The deposition testimony

of Mr. Dunhem and Mrs. Dunhem seems to show that Plaintiffs expressed an interest in liquidating

their *entire* portfolio.  The following portion of Mr. Dunhem's deposition testimony underscores this

point:

>    Q:      My question [is] was there ever a time where you told things
>            to SunTrust and SunTrust did not listen?
>    A:      When my wife suggested we should sell, just be done with
>            the *whole thing*, and I brought that to the bank, the bank tried

to convince us that, no this is not the right time to do it.

(Emphasis added).

In a similar vein, Mrs. Dunhem stated that she overheard a conversation between someone at SunTrust and her husband where she heard her husband saying "it." When asked what "it" was, Mrs. Dunhem answered that "it" was "getting out of the market altogether." Mrs. Dunhem also admitted that she never spoke directly to anyone at SunTrust about selling the assets in their portfolio. There is no evidence that would suggest that SunTrust should have advised them to liquidate their *entire* account.[3] As such, Plaintiffs have not shown that the alleged statements were in fact false.

Finally, Plaintiffs cite to Hardesty's report as support for their contention that the use of leverage was never appropriate for the accounts the Dunhems established. As discussed in Section I of this Opinion, this Court has excluded the testimony of Hardesty and Plaintiffs have not directed this Court to any other *admissible* evidence that SunTrust made false statements when the bank allowed them to establish a line of credit. Therefore, this Court finds that, at this stage, Plaintiffs have not come forward with evidence that would avert summary judgment and will not reinstate the previously dismissed portion of Count I.

C.    Count II

In addition, Plaintiffs also request that this Court reconsider its grant of summary judgment on Count II insofar as it relates to Plaintiffs' line of credit with SunTrust.

Asserting that Defendant had a fiduciary duty to Plaintiffs, Plaintiffs urge this Court to find

---

[3] Indeed, in their brief that argues for the admission of Hardesty's testimony, Hardesty takes a seemingly contrary position and states that he never opined that Plaintiffs should sell their entire portfolio.

that Defendant could have had a legal duty to manage and reduce their line of credit. However, many of the cases Plaintiffs cite in their fiduciary duty argument are simply inapposite because these cases arise in other contexts. *E.g.*, *Messick v. Pennell*, 35 A.2d 143 (Md. 1943) (stating that a "confidential relationship" between a father and his daughter must be proved before a court may decide to set aside a validly executed deed that conveyed land from the father to the daughter); *Anderson v. Watson*, 118 A.2d 569, 576 (Md. 1922) (finding that a mining company had a fiduciary duty to miners to correctly weigh coal where "[t]he coal which measured the compensation to be paid to the men who mined it was weighed by the company on its own scales and by its own agents, out of the presence of the miners, who were by the necessities of the case precluded from witnessing the operation of weighing, and who were as a practical matter obliged to rely on the good faith of the company"); *Allen v. Steinberg*, 223 A.2d 240 (Md. 1966) (relating to fiduciary duties in a partnership). For example, Plaintiffs state that the case of *Messick v. Pennell* holds that a "fiduciary relationship is a question of fact to be decided on a case by case basis." Yet, the entire passage to which Plaintiffs refer states, "The only distinction between voluntary conveyances from parents to children and from children to parents is that in the former case the existence of a confidential relationship between the parties is a matter of fact to be proved, while in the latter, under certain circumstances, it may be presumed as a matter of law. . . Whether confidential relationship existed is a question of fact." *Messick*, 35 A.2d at 147. Indeed, not one of these cases stand for the proposition that a bank owes a heightened duty to advise a client on an account or a loan that the bank does not control. In short, as stated previously, this Court again finds that Plaintiffs have failed

11

to present any evidence[4] or cite any law that would support their position that SunTrust had an *independent* duty to manage the line of credit.

D.    Count III

Plaintiffs also argue that this Court erred by finding that SunTrust did not breach its contractual obligations to Plaintiffs.  In their brief, Plaintiffs concede that "there is not a Maryland case directly on point" or that holds that a bank's alleged negligence automatically gives rise to a cause of action for breach of contract.  In addition, Plaintiffs rely on various authorities outside of this jurisdiction and cases that deal with other types of professional services.[5]  These cases do not demonstrate that this Court clearly erred when it rejected Plaintiffs' interpretation of the contract at issue, and the Court sees no reason to extend Maryland law beyond the bounds of precedent. Accordingly, summary judgment was appropriate on Count III.

---

[4] Aside from Plaintiffs' own self-serving statements, they present the deposition testimony of Mark Avallone.  In his deposition, Avallone stated that while he recommended that the Dunhems pay off their line of credit, they decided to disregard this advice.  This testimony completely undermines their assertion that SunTrust had a duty to manage and pay the line of credit, but rather implies that the Dunhems ultimately were responsible for decisions that related to the line of credit.

In addition to this testimony, Plaintiffs again cite promotional materials from SunTrust to show that SunTrust had a duty to manage the line of credit.  This Court has previously found that the materials contain only vague and general statements of services.

[5] Interestingly, Plaintiffs did not discuss these cases in their initial opposition to Defendant's motion for summary judgment.

## <u>CONCLUSION</u>

In sum, upon thorough consideration of the pending motions for reconsideration, and the authority offered in support of them, the Court does not believe that its rulings were in error or that Plaintiffs have presented any new information, either factual or legal, which warrants a modification of the rulings. As such, this Court will DENY Plaintiffs' Motion for Reconsideration of the Court's Memorandum Opinion dated March 2, 2006 [79], will DENY Plaintiff's Motion for Reconsideration of this Court's Memorandum dated March 23, 2006 [85], and will GRANT Defendant's Motion to Strike [91].  A separate Order consistent with this Opinion will follow.


<u>August 22, 2006</u>                                          <u>        /s/        </u>
Date                                                                    Alexander Williams, Jr.
                                                                        United States District Judge

13